FRANCESCO DONADIO, complainant,

*v.*

GIOVANNINA STANZIALE et al., defendants.

[Decided December 6th, 1926.]

**Conveyances—Resulting Trusts—Complainant Had Title to Land Put in Name of Friend—Friend Died, His Heir Died, and Title Passed to His Heirs Next of Kin, Who Conveyed to Defendants—Defendants Brought Ejectment Suit Against Complainant Who was in Possession—Ejectment Suit Stayed by This Action to Impress a Trust For Benefit of Complainant—Facts Reviewed and Held, That Complainant Has Made Out His Case.**

On final hearing.

*Messrs. Howe & Davis,* for the complainant.

*Mr. Ovidio C. Bianchi* and *Messrs. Donohue & O'Brien,* for the defendants.

BACKES, V. C.

On December 26th, 1911, Dante Mauro conveyed a vacant lot, the premises involved in this suit, to Francesco Ciampi, subject to a mortgage of $800. The complainant, Donadio, claims he paid the consideration price of $200, and that the title was taken in the name of Ciampi in trust for him, and he prays that it be so decreed. Ciampi died leaving a son, who is now also dead. The title devolved upon two cousins in Italy as his heirs-at-law. They conveyed to the defendant Giovannina Stanziale, who brought an action in ejectment in the Essex circuit against the complainant, which was stayed on the filing of the bill. Mrs. Stanziale, a sister of Mrs. Ciampi, knew of the complainant's claim and possession when she got the heirs to convey, which she alleges was for a valuable consideration, but how much is not divulged.

Donadio wanted to build a home. He had enough to pay for the lot but had to secure money on a mortgage to build the house. His wife was in Italy. And, perplexed, he consulted his lawyer, Mr. Bianchi, who advised taking the title in the name of his friend, Ciampi, and Ciampi consented. The contract for building the house was undertaken in Ciampi's name, and he and his wife executed a bond and mortgage to a building and loan association to obtain the necessary funds. The $800 mortgage was paid off and the balance used for construction. The contractor abandoned the work and Donadio finished the job. He personally dug the cellar, and purchased the material and paid for it, and engaged the mechanics and paid them. The money raised by the building and loan mortgage was used as far as it would reach and he paid the balance. He paid the monthly dues to the building and loan association until the mortgage was paid off, and he paid the annual tax and water rates. His wife joined him in 1913 or 1914. He has occupied the house since it was finished in August, 1912. The Ciampis lived there too. Ciampi died in October, 1912, and his widow and son continued. His son died in 1914, and the widow stayed on until shortly before she passed away in 1915 or 1916. Donadio and Ciampi were close friends. He boarded with them for years before he built the house, and after that until his wife came. After the son died it was thought that his mother was his heir, and she executed a deed to Donadio for the property. These things are all affirmed by Donadio, and his story is supported by others. Mauro, who conveyed to Ciampi, says that Donadio negotiated for the lot, and the deal was made with him. He first met Ciampi at Howe & Davis' office when the deed was executed by him and his wife. Donadio had arranged the time and place, and he was there, but not in the room when the consideration was paid by Ciampi and the deed delivered. He remained in the outer office. Bianchi, the lawyer, testified that Donadio came to his office with Ciampi and told him he was about to buy the lot and build, and wanted the title searched, and that he advised that it better be done when the building loan mortgage

was taken, that the deed to the lot should not be taken in his and his wife's name (she was out of the country but was expected to arrive soon, as she had been vised by the consul at home) because he would not be able to raise the money on a mortgage to build, and further, that the title be taken in the name of a trusted friend, and that Donadio suggested Ciampi and Ciampi agreed. A representative of Alexander Neil & Company says Donadio bought windows, frames, doors and moldings from his firm for the job and paid cash. The plumber says he ordered work amounting to nearly $300, and, after payment on account by the building and loan association, the balance of $110 was paid by Donadio in $10 lots, and that it took him two years to pay it. The painter says he was hired by Donadio, and that he paid him $100 for the work. The dealer in lumber and masons' material, who had sold material to the defaulting contractor, testified that Donadio also bought material from him and paid him some cash—some coming from the building loan mortgage. He further says that he always believed Donadio to be Ciampi. He evidently knew of the Ciampi contract with the defaulting contractor. The treasurer of the building and loan association testified that Donadio paid the monthly dues and that he was usually the first in line on pay night.

That Donadio paid the purchase price we have only from his lips, and that Ciampi actually paid over the $200 at the time the deed was delivered is admitted by him, but he says he gave it to Ciampi in the outer room of Howe & Davis' office just before the transfer was made. And there is no reason to doubt it. All the established circumstances, to which allusion has been made, bear him out. He said he saved the $200 and carried it on his person. He had a bank account in which he had made a single deposit of $100 a year before, which, in a measure, it is argued, discredits his assertion that he had accumulated the additional sum. He earned $14 a week and was frugal. It is not improbable. And the pride of possession and gratification in the touch of money, strong in some people, may answer the other criticism.

A few days before the transfer of the lot to Ciampi he, Ciampi, withdrew all his savings, $314.22, from his bank, and Donadio witnessed the withdrawal card, and the implication is that it was used to pay the purchase price. Why was all drawn if only $200 was required? Donadio explains that Ciampi's wife was ill and in consultation with a New York specialist and about to undergo a surgical operation, and that the money was drawn to meet the expenses. There is nothing to controvert this.

After Mrs. Ciampi conveyed to Donadio she filed a bill to set aside the deed for fraudulent procurement (Docket 40-375), all parties, including the lawyers, believing she held the legal title by inheritance from her son. In his answer Donadio denied the fraud and set up the consideration to be $700, and the argument is that his failure to then set up his equitable ownership refutes his present contention. Bianchi, the solicitor, gives a satisfactory explanation. He was called in to draft the deed. Donadio's equitable claim was recognized and rehearsed at the time. Bianchi says he was inexperienced and thought that a then present valuable consideration had to be stated, and that $700 was reached as the amount that Donadio had advanced from time to time to Mrs. Ciampi, during her widowhood while ill and living with him, for medical aid. When the suit was brought charging forgery, in effect, Bianchi contented himself with joining issue and was prepared to meet it. The case never came to trial, possibly because Mrs. Ciampi died, or, mayhap, the lawyers discovered by that time that she had had no title to convey. The shortcoming of his lawyer in failing to set up his equitable claim he then had, and has now proved, is of no probative force against Donadio at this time.

Objection was made to the testimony by Donadio of transactions and statements with Ciampi, the deceased, as not competent under section 4 of the Evidence act (*Comp. Stat. p. 2218*) because the heirs-at-law who conveyed to the defendant Stanziale were parties to the suit in a representative capacity. They are not heirs of Ciampi; they are heirs of his son, and if they had been heirs of Ciampi the testimony would have

been admissible. They were joined in the bill not in a representative capacity, but merely as owners of the land against which the complainant has preferred his equitable claim. *McKinley* v. *Coe*, *66 N. J. Eq. 70,* and cases there cited. The complainant has made out his case of a resulting trust. *Phillips* v. *Phillips, 81 N. J. Eq. 459; affirmed, 83 N. J. Eq. 345.*

Decree for complainant.